The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD HURRLE, individually and on behalf
of all others similarly situated,

                           Plaintiff,

      v.

REAL TIME RESOLUTIONS, INC.,

                        Defendant.

No. C13-05765BHS

MOTION TO STAY PENDING
OUTCOME OF PETITIONS
BEFORE FCC

**Note on Motion Calendar:
January 17, 2014**

MOTION TO STAY
(C13-05765BHS)
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND .................................................................................. 2

    A.   Mr. Hurrle's Allegations. ........................................................................... 2

    B.   The Pending Petitions for FCC Declaratory Rulings. ................................ 3

        1.   *In re Communication Innovators* ................................................... 3

        2.   *In re GroupMe* ................................................................................ 5

        3.   *In re YouMail* ................................................................................. 5

III. Argument ............................................................................................................. 6

    A.   The Court Should Stay this Action Under the Primary Jurisdiction Doctrine Pending FCC Guidance that May Dispose of Plaintiff's Claims. ............................................. 6

        1.   Mr. Hurrle's Claims Require Resolving Whether the TCPA Applies to Non-Telemarketing Calls and What Constitutes an ATDS. ........................................... 7

        2.   Congress Granted the FCC Primary Jurisdiction to Resolve Whether the TCPA Applies to Non-Telemarketing Calls and What Constitutes an ATDS. ............... 8

        3.   Regulating Non-Telemarketing Calls and Defining What Constitutes an ATDS Requires Agency Expertise and National Uniformity. ........................................ 9

    B.   The Court Should Stay this Action Pursuant to the Court's Inherent Authority. ...... 11

IV.  CONCLUSION .................................................................................................... 12

MOTION TO STAY
(C13-05765BHS) — i
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

## TABLE OF AUTHORITIES

2
                                                                                    **Page(s)**
3
**Cases**

4   *Alea London Ltd. v. Am. Home Servs., Inc.,*
      638 F.3d 768 (11th Cir. 2011) .................................................................... 11
5
6   *Barahona v. T-Mobile US, Inc.,*
      628 F. Supp. 2d 1268 (W.D. Wash. 2009) ............................................. 10, 11
7
    *Blair v. CBE Grp., Inc.,*
8     2013 WL 5677026 (S.D. Cal. Oct. 17, 2013) ............................................... 9
9   *Cayanan v. Citi Holdings, Inc.,*
      928 F. Supp. 2d 1182 (S.D. Cal. 2013) ...................................................... 10
10
11  *Charvat v. EchoStar Satellite, LLC,*
      630 F.3d 459 (6th Cir. 2010) ..................................................... 6, 8, 10, 11
12
    *Clark v. Time Warner Cable,*
13    523 F.3d 1110 (9th Cir. 2008) .............................................................. 6, 11
14  *Coppock v. Citigroup, Inc.,*
      2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) ......................................... 10
15
16  *Daniels-Hall v. Nat'l Educ. Ass'n,*
      629 F.3d 992 (9th Cir. 2010) ....................................................................... 3
17  *Davel Commc'ns, Inc. v. Qwest Corp.,*
18    460 F.3d 1075 (9th Cir. 2006) ..................................................................... 6
19  *Fried v. Sensia Salon, Inc.,*
      2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) .......................................... 8, 11
20
    *Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.,*
21    386 F. Supp. 2d 144 (W.D.N.Y. 2005) ...................................................... 12
22  *Glauser v. Twilio, Inc.,*
      2012 WL 259426 (N.D. Cal. Jan. 27, 2012) ............................................... 11
23
24  *Hunt v. 21st Mortg. Corp.,*
      2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) ........................................... 10
25
    *Iniguez v. CBE Grp.,*
26    __ F. Supp. 2d. __, 2013 WL 4780785 (E.D. Cal. Sept. 5, 2013) .................... 9

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Jamison v. First Credit Servs., Inc.,*
   290 F.R.D. 92 (N.D. Ill. 2013) .................................................................................. 10

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) .................................................................................................. 12

*Leyva v. Certified Grocers of Cal., Ltd.,*
   593 F.2d 857 (9th Cir. 1979) .................................................................................... 12

*Mais v. Gulf Coast Collection Bureau, Inc.,*
   __ F. Supp. 2d. __, 2013 WL 1899616 (S.D. Fla. May 8, 2013) ............................... 9

*Malta v. Fed. Home Loan Mortg. Corp.,*
   2013 WL 444619 (S.D. Cal. Feb. 5, 2013).............................................................. 10

*Manno v. Healthcare Revenue Recovery Grp., LLC,*
   289 F.R.D. 674 (S.D. Fla. 2013) ............................................................................. 10

*Meyer v. Portfolio Recovery Assocs., LLC,*
   707 F.3d 1036 (9th Cir. 2012), *cert. denied,* 133 S. Ct. 2361 (2013) ....................... 9

*Meyer v. Receivables Performance Mgmt., LLC,*
   2013 WL 1914392 (W.D. Wash. May 8, 2013) ....................................................... 10

*N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.,*
   594 F.3d 1149 (9th Cir. 2010) .................................................................................... 6

*Nelson v. Santander Consumer USA, Inc.,*
   931 F. Supp. 2d 919 (W.D. Wis.),
   *vacated in its entirety by* 2013 WL 5377280 (W.D. Wis. June 7, 2013) ................... 10

*O'Connor v. Diversified Consultants, Inc.,*
   2013 WL 2319342 (E.D. Mo. May 28, 2013) ........................................................... 9

*Rogers v. Medicredit, Inc.,*
   2013 WL 4496278 (E.D. Mo. Aug. 21, 2013) ........................................................... 9

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,*
   7 FCC Rcd. 8752 (1992) ............................................................................................ 7

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,*
   10 FCC Rcd. 12391 (1995) ......................................................................................... 7

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,*
   18 FCC Rcd. 14014 (2003) .................................................................................. 7, 8, 9

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,*
   23 FCC Rcd. 559 (2008) ............................................................................................ 8

MOTION TO STAY
(C13-05765BHS) — iii
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ................................................................8

*S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n,*
    744 F.2d 1107 (5th Cir. 1984), *vacated on other grounds*, 476 U.S. 1166 (1986) ...............9

*Selby v. Deutsche Bank Trust Co. Ams.,*
    2013 WL 1315841 (S.D. Cal. Mar. 28, 2013) ....................................................10

*United States v. DISH Network, LLC,*
    2011 WL 475067 (C.D. Ill. Feb. 4, 2011) ......................................................11

*United States v. W. Pac. R.R. Co.,*
    352 U.S. 59 (1956) ............................................................................11

**Federal Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*..........................................1, 2, 7, 8

**Rules**

Fed. R. Civ. P. 26(f) ..............................................................................12

**Regulations**

47 C.F.R. § 64.1200.................................................................................9

**Other Authorities**

*In re Rules & Regs. Implementing the TCPA*, 68 Fed. Reg. 44144 (July 25, 2003) ....................4

*In re Rules & Regs. Implementing the TCPA*, 73 Fed. Reg. 6041 (Feb. 1, 2008).......................4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

Plaintiff Richard Hurrle alleges defendant Real Time Resolutions, Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by allegedly using an automatic telephone dialing system ("ATDS") to call his cell phone without his prior express consent.  According to Mr. Hurrle, Real Time, a specialty home loan servicer, placed these calls to "demand[] payment" on a second mortgage.  Compl. ¶ 17 [Dkt. 1].  Mr. Hurrle's Complaint will turn on two issues currently pending before the FCC in three Petitions for Declaratory Ruling:  (1) whether the TCPA applies to non-telemarketing calling activity (such as the debt-collection calls about which Mr. Hurrle complains); and (2) whether dialing equipment must have a current capacity to generate and dial random or sequential numbers to be an ATDS (not a mere theoretical capacity if modified by hardware or software).  An FCC ruling that the TCPA does not encompass non-telemarking calling activity could dispose of Mr. Hurrle's Complaint.  And if the FCC concludes dialing equipment must have the current capacity to generate and dial random or sequential numbers, rather than a mere theoretical capacity (which even consumer smartphones have), that too would gut Mr. Hurrle's claim.  The Court should stay this case either under the primary jurisdiction doctrine or pursuant to the Court's inherent authority pending the FCC's rulings on these petitions.

The present circumstances meet the standard for staying the case under the primary jurisdiction doctrine.  *First*, Mr. Hurrle's allegations require resolving whether the TCPA applies to non-telemarketing calls, and whether equipment lacking the current capacity to generate and dial random or sequential numbers falls within the TCPA's ambit.  *Second*, the FCC has primary jurisdiction to determine, and in fact will determine, these very issues.  *Third*, regulating non-telemarking calls to cell phones and defining what comprise ATDSs requires agency expertise and national uniformity.

But regardless of the primary jurisdiction doctrine, the Court should invoke its inherent power to stay this action to avoid burdening the parties and the Court with further proceedings regarding claims the FCC's imminent rulings might dispose of entirely, particularly where doing

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  so will not prejudice Mr. Hurrle.

2  **II.    FACTUAL BACKGROUND**

3  **A.    Mr. Hurrle's Allegations.**

4      In his Complaint, Mr. Hurrle alleges Real Time called his cell phone without his consent

5  to "demand[] payment" for a second mortgage he had obtained.  Compl. ¶ 17.  He alleges Real

6  Time "is a 'specialty servicer' of residential real estate mortgage loans, specializing in servicing

7  loans that are in default."  *Id.* ¶ 6.  Without pleading any supporting factual allegations,

8  Mr. Hurrle baldly concludes Real Time placed these calls to his cell phone using "an automatic

9  telephone dialing system as defined by the TCPA."  *Id.* ¶ 18.

10      According to Mr. Hurrle, these alleged calls violated the TCPA's restrictions on placing

11  telemarketing calls to cell phones using ATDSs.  *Id.* ¶¶ 28-35.  Mr. Hurrle acknowledges

12  Congress "enacted the [TCPA] in response to a growing number of consumer complaints

13  regarding certain telemarketing practices."  *Id.* ¶ 7.  The TCPA prohibits "any person … [from]

14  mak[ing] any call (other than a call made for emergency purposes or made with the prior express

15  consent of the called party) using an automatic telephone dialing system or an artificial or

16  prerecorded voice … to any telephone number assigned to a … cellular telephone service."  47

17  U.S.C. § 227(b)(1)(A)(iii).  It defines an ATDS as "equipment which has the capacity—(A) to

18  store or produce telephone numbers to be called, using a random or sequential number generator;

19  and (B) to dial such numbers."  *Id.* §§ 227(a)(1)(A), (B).  Real Time's dialing equipment lacks

20  the present capacity to "store or produce numbers to be called, using a random or sequential

21  number generator … and to dial such numbers" as required for its equipment to comprise an

22  ATDS.  *See id.*; Payson Decl. ¶ 2.

23      Based on these allegations, Mr. Hurrle seeks to represent a nationwide class of "[a]ll

24  persons within the United States who received a non-emergency telephone call from Real Time

25  Resolutions, Inc. to a cellular telephone through the use of an automatic telephone dialing system

26  and who did not provide prior express consent for such calls, at any time from August 30, 2009

27  to the date of trial."  Compl. ¶ 20.  Mr. Hurrle requests injunctive relief, treble damages for each

MOTION TO STAY
(C13-05765BHS) — 2
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  putative class member "for each and every call" that violates the TCPA, and attorneys' fees and

2  costs. *Id.* ¶¶ 31, 34, G.

3  **B.    The Pending Petitions for FCC Declaratory Rulings.**

4         Mr. Hurrle contends the Court should hold callers liable for debt-related calls, even

5  though such calls are not telemarketing, and even if the dialing equipment lacks a present

6  capacity to store or produce random or sequential numbers for dialing. *Id.* ¶¶ 10-11, 17-18.  Real

7  Time's counsel explained to Mr. Hurrle's counsel that Real Time's dialing equipment lacks such

8  capacity.  Payson Decl. ¶ 2.  Three petitions for declaratory rulings currently before the FCC ask

9  the agency to decide whether the TCPA applies to non-telemarketing calling activities, and

10  whether equipment that lacks the current capacity for random or sequential number generation

11  constitutes an ATDS.  *See* Payson Decl. Exs. A, E & G (*In re Commc'n Innovators' Pet. for*

12  *Declaratory Ruling*, CG Dkt. No. 02-278 (June 7, 2012) ("CI Petition"); *In re GroupMe,*

13  *Inc./Skype Commc'ns S.A.R.L.'s Pet. for Expedited Declaratory Ruling & Clarification*, CG Dkt.

14  No. 02-278 (Mar. 1, 2012) ("GroupMe Petition"); *In re YouMail, Inc.'s Pet. for Expedited*

15  *Declaratory Ruling*, CG Dkt. No. 02-278 (Apr. 19, 2013) ("YouMail Petition")).[1]  As a result,

16  Real Time's counsel asked Mr. Hurrle's counsel to agree to a stay pending the FCC's

17  determination on those rulings.  Payson Decl. ¶ 2.  Mr. Hurrle's counsel declined.  *Id.*

18         **1.    *In re Communication Innovators***

19         On June 7, 2012, Communication Innovators ("CI") filed a Petition for Declaratory

20  Ruling with the FCC, seeking a declaration that "the Commission clarify, consistent with the text

21  of the TCPA and Congressional intent, that predictive dialers that (1) are not used for

22  telemarketing purposes and (2) do not have the current ability to generate and dial random or

23  sequential numbers, are not 'automatic telephone dialing systems' . . . under the TCPA and the

24

25

26  [1] The Court may take judicial notice of information made "publicly available by government entities" and whose
authenticity no party disputes, such as declaratory ruling petitions filed with the FCC, and subsequent filings by the
FCC and other parties on the same docket.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)

27  (citing Fed. R. Evid. 201)).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   Commission's TCPA rules." Payson Decl. Ex. A (CI Pet. at 1) (footnote omitted).[2]

2        In requesting this ruling, the CI Petition points out that the TCPA does not define

3   "capacity," and urges the FCC to "clarify that the definition of an autodialer under the TCPA

4   reflects equipment that has a *present* capacity, such as having the current ability to generate and

5   dial random or sequential numbers without additional modifications to the equipment." *Id.* at 17.

6   It argues the FCC "should not interpret capacity as encompassing any conceivable hardware or

7   software modification to a device that would permit it to generate, store, and dial numbers

8   randomly or in sequence." *Id.* As the CI Petition notes, interpreting "capacity" broadly to

9   include "any conceivable hardware or software modification" would potentially bring "mobile

10   phones, smart phones, tablets, e-readers, and personal computers" within the TCPA's scope, as

11   each can "theoretically be modified … to randomly or sequentially generate and dial telephone

12   numbers." *Id.*

13        The CI Petition also asks the FCC to "distinguish between telemarketing and

14   informational calls when it clarifies the meaning of capacity." *Id.* In particular, the CI Petition

15   contends "today's predictive dialers—many of which have no current capacity to dial random or

16   sequential numbers—are used for a number of innovative non-telemarketing purposes that

17   simultaneously bring benefits to consumers and businesses" such as "allowing businesses with a

18   legitimate need to contact a large number of specific accountholders or other consumers to do so

19   accurately, efficiently, and cost-effectively." *Id.* at 18-19.

20        Communication Innovators filed its Petition on June 7, 2012. About four months later,

21   the FCC issued a public notice, seeking comment on the Petition. *See* Payson Decl. Ex. B (FCC

22   Pub. Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for

23   Declaratory Ruling from Communication Innovators (Oct. 16, 2012)). The deadline for

24   comments and reply comments closed in November 2012, over a year ago. *Id.* Numerous

25

26   [2] The FCC has interpreted the TCPA's definition of ATDS to include equipment that dials lists of number without
human intervention. *In re Rules & Regs. Implementing the TCPA*, 73 Fed. Reg. 6041, 6042 (Feb. 1, 2008). The
FCC calls this equipment "predictive dialers." *In re Rules & Regs. Implementing the TCPA*, 68 Fed. Reg. 44144,
27   44161 (July 25, 2003).

MOTION TO STAY
(C13-05765BHS) — 4
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  consumer and industry groups commented, most of which generally supported CI's Petition. *See*

2  Payson Decl. Ex. C (Reply Comments of Communication Innovators, CI Pet., CG Docket No.

3  02-278 (Nov. 30, 2012)) (discussing various comments filed at pp. 2, 3, 7, 8, 10, 12, 13 & 15).

4  While the formal comment period has now passed, interested parties have continued to submit

5  letters to the Commission and regularly visit with Commission staff urging prompt action.

6       Recently, the FCC has indicated that it may issue a decision regarding the CI Petition

7  imminently.  On September 27, 2013, the FCC released an exchange of correspondence between

8  several Members of Congress and the then-FCC Chair (and the Acting Chief of the Consumer

9  and Governmental Affairs Bureau), in which the Commission stated that "[a] draft order to

10  resolve the [CI] Petition is under consideration by the Commission, and Communication

11  Innovators has met with the staff recently to discuss the matter." *See* Payson Decl. Ex. D.  The

12  letter from Congress (signed by three Members) to the then-FCC Chair was dated June 19, 2013,

13  and the FCC's response, though not released until September 27, 2013, was dated September 10,

14  2013.  This recent flurry of activity regarding the CI Petition bolsters the assumption that the

15  FCC will issue directly relevant guidance soon.

16       **2.**    ***In re GroupMe***

17       In its Petition for Declaratory Ruling, filed on March 1, 2012, GroupMe also requested

18  "that the Commission issue a ruling defining 'capacity' to encompass only equipment that, *at the*

19  *time of use*, could, in fact, have autodialed random or sequential numbers without human

20  intervention and without first being technologically altered." Payson Decl. Ex. E (GroupMe Pet.

21  at 14).  On July 24, 2012, the FCC issued a public notice seeking comment on GroupMe's

22  petition. *Id.* Ex. F (FCC Pub. Notice, Consumer and Governmental Affairs Bureau Seeks

23  Comment on Petition for Expedited Declaratory Ruling from GroupMe, Inc. (July 24, 2012)).

24  The deadline for comments was August 30, 2012, and for reply comments, September 10, 2012.

25       **3.**    ***In re YouMail***

26       YouMail, Inc., filed its Petition for Declaratory Ruling on April 19, 2013.  Like

27  Communication Innovators and GroupMe, YouMail asks that "the Commission affirmatively

MOTION TO STAY
(C13-05765BHS) — 5
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  state that only equipment that has a <u>current</u> capacity to store and produce telephone numbers to

2  be called using a random or sequential number generator—and is currently being used for that

3  purpose—should be considered an ATDS." Payson Decl. Ex. G (YouMail Pet. at 11).  On June

4  25, 2013, the FCC issued a public notice seeking comment on YouMail's petition.  *See* Payson

5  Decl. Ex. H (FCC Pub. Notice, Consumer and Governmental Affairs Bureau Seeks Comment on

6  Petition for Expedited Declaratory Ruling from YouMail, Inc. (June 25, 2013)).  The deadline

7  for comments was July 25, 2013, and for reply comments, August 9, 2013.  YouMail's proposed

8  interpretation of the term "capacity" as current capacity received "widespread support from the

9  majority of commenters."  *Id.* Ex. I (Reply Comments of YouMail, Inc. at 2 (Aug. 9, 2013)).

## III.   ARGUMENT

### A.   The Court Should Stay This Action Under the Primary Jurisdiction Doctrine Pending FCC Guidance That May Dispose of Plaintiff's Claims.

Under the primary jurisdiction doctrine, courts may stay proceedings or dismiss a

complaint without prejudice pending resolution of "'an issue within the special competence of an

administrative agency.'"  *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149,

1162 (9th Cir. 2010) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.

2008)).  Courts invoke the primary jurisdiction doctrine "to advance regulatory uniformity," "to

answer a question … within the agency's discretion," and "to benefit from technical or policy

considerations within the agency's … expertise." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d

459, 466 (6th Cir. 2010) (invoking primary jurisdiction doctrine in TCPA case) (internal

quotation marks omitted).  The Ninth Circuit instructs that courts may stay a case pending an

agency determination "where there is (1) the need to resolve an issue that (2) has been placed by

Congress within the jurisdiction of an administrative body having regulatory authority

(3) pursuant to the statute that subjects an industry or activity to a comprehensive regulatory

scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v.*

*Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006) (internal quotation marks omitted).  This

case satisfies all of these factors.  The Court should stay this action pending the FCC's likely

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

imminent ruling on the pending petitions.

**1.    Mr. Hurrle's Claims Require Resolving Whether the TCPA Applies to Non-Telemarketing Calls and What Constitutes an ATDS.**

To prove his TCPA claim, at a minimum, Mr. Hurrle must show Real Time used an ATDS to call his cell phone without his consent. 47 U.S.C. § 227(b)(1)(A)(iii). Mr. Hurrle agrees Congress passed the TCPA to curb telemarketing activities. Compl. ¶ 7. Mr. Hurrle alleges Real Time called his cell phone without his consent to "demand[] payment" for a second mortgage. *Id.* ¶¶ 17-18. Although he claims Real Time used an ATDS, he does not allege Real Time's calling equipment has the current capacity to store or produce randomly or sequentially generated numbers, yet he claims these alleged calls violated the TCPA. *Id.* The FCC's declaratory ruling on the Petitions will resolve whether debt-related calls (i.e., non-telemarketing calls) and calls placed from a dialer that lacks a current capacity to store or produce randomly or sequentially generated numbers fall within the TCPA's prohibitions.

Originally, the FCC determined that debt-collection calls not directed to random or sequential numbers did not fall within the TCPA's definition of an ATDS. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 ¶ 39 (1992). In that ruling, the FCC also recognized Congress passed the TCPA to protect consumers from unrestricted telemarketing practices, not non-telemarketing calling activities. *Id.* ¶ 9. A few years later, the FCC confirmed the TCPA does not prohibit certain non-telemarketing calls because such calls "are not directed to randomly or sequentially generated telephone numbers, but instead are directed to the specifically programmed contact numbers." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391 ¶ 19 (1995).

In 2003, however, the FCC ruled that some predictive dialers that do not use a random or sequential number generator are ATDSs under the TCPA. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ¶ 133 (2003). In particular, the FCC ruled "to be considered an 'automatic telephone dialing system,' the equipment need only have the *capacity* to store or produce telephone numbers." *Id.* ¶ 132. The FCC reached this conclusion

MOTION TO STAY
(C13-05765BHS) — 7
DWT 23009642v4 0099035-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    out of concern that technological changes had influenced telemarketers to use predictive dialers

2    to call lists of numbers rather than to call random or sequential numbers.  *Id.*  The FCC

3    reaffirmed this position in a 2008 ruling.  *In re Rules & Regs. Implementing the Tel. Consumer*

4    *Prot. Act of 1991*, 23 FCC Rcd. 559 (2008).  But neither the TCPA nor the FCC has defined

5    what "capacity" means—whether it includes non-telemarketing calls and calls placed from

6    equipment that lacks the current "capacity" to store or produce randomly or sequentially

7    generated numbers.  47 U.S.C. § 227(a)(1)(A).[3]

8            Resolving Mr. Hurrle's claims will require answering these questions.  Mr. Hurrle cannot

9    state a TCPA claim against Real Time unless he can prove Real Time used an ATDS and placed

10   prohibited calls.  *See id.* § 227(b)(1)(A)(iii).  The Petitions place these questions, which raise

11   first impression issues, squarely before the FCC.

12           2.      **Congress Granted the FCC Primary Jurisdiction to Resolve Whether
                     the TCPA Applies to Non-Telemarketing Calls and What Constitutes**
13                   **an ATDS.**

14           Congress explicitly gave the FCC the power to implement and construe the TCPA.  *Id.*

15   § 227(b)(2).  Specifically, the TCPA empowers the FCC to prescribe regulations under the Act,

16   *see id.* §§ 227(b)(2), (c)(1), (c)(2), to exempt calls from the requirements of the Act, *see id.*

17   §§ 227(b)(2)(B), (b)(2)(C), to intervene in suits filed by state attorneys general, *see id.*

18   § 227(g)(3), and to enforce the Act and its accompanying regulations.  *See also Charvat*, 630

19   F.3d at 466-67 (same).  "Congress vested the FCC with considerable authority to implement"

20   and construe the TCPA.  *Id.* at 466 (citing 47 U.S.C. § 227(b)(2)).  Consistent with that authority,

21   the FCC has created a complex regulatory scheme that governs telemarketing.  It has done so by

22   adopting new regulations as technologies and business practices evolve.  *See, e.g., In re Rules &*

23   *Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ¶¶ 132-133; *Fried*

24   *v. Sensia Salon, Inc.*, 2013 WL 6195483, at *5 (S.D. Tex. Nov. 27, 2013) ("The FCC has

25   regulatory power over this [telemarketing] industry and can respond to changes in the industry

26   _____

     [3] While the Ninth Circuit has considered the TCPA's use of the word "capacity," it has not defined that word as used

27   under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   through regulations, reports and orders, declaratory rulings, and other available tools."; staying

2   case). In fact, the FCC has enacted rules and rules revisions regarding the permissible scope of

3   automated telephoning activity under the TCPA dozens of times since 1992. *See* 47 C.F.R.

4   § 64.1200 (rule-making history).

5   Given the specific role Congress conferred on the FCC under the TCPA, the FCC

6   occupies the best position to determine whether non-telemarketing activity falls within the

7   TCPA's sphere and what "capacity" means under the TCPA. Resolving these questions will

8   require the FCC to reconcile its prior rulings, as well as to interpret the TCPA. A ruling from the

9   FCC (1) declaring non-telemarketing calling activity as outside the TCPA's domain (either

10  generally or because it does not meet the TCPA's definition of an ATDS), or (2) declaring that

11  "capacity" under the TCPA means current capacity (not a theoretical capacity if modified), could

12  dispose of Mr. Hurrle's claims.

### 3.   Regulating Non-Telemarketing Calls and Defining What Constitutes an ATDS Requires Agency Expertise and National Uniformity.

13

14
In enacting the TCPA, Congress intended to "promote a uniform regulatory scheme
15
under which telemarketers would not be subject to multiple, conflicting regulations. . . . [and] to
16
avoid burdensome compliance costs for telemarketers." *In re Rules & Regs. Implementing the*
17
*Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ¶ 83 (2003). "[T]hrough the application of
18
the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent ...
19
significant inconsistent application of FCC rules . . . ." *S. Cent. Bell Tel. Co. v. La. Pub. Serv.*
20
*Comm'n*, 744 F.2d 1107, 1118 (5th Cir. 1984), *vacated on other grounds*, 476 U.S. 1166 (1986).
21
Here, because whether the TCPA applies only to telemarketing activity and what
22
"capacity" means present first impression issues, a risk of "significant inconsistent application of
23
FCC rules" on these issues exists. *Id.* Indeed, plaintiffs have filed numerous TCPA class actions
24
regarding collection calls just this year alone.[4] The sheer "volume of [pending] lawsuits
25

26  [4] *See, e.g., Blair v. CBE Grp., Inc.*, 2013 WL 5677026 (S.D. Cal. Oct. 17, 2013); *Iniguez v. CBE Grp.*, __ F. Supp. 2d. __, 2013 WL 4780785 (E.D. Cal. Sept. 5, 2013); *Rogers v. Medicredit, Inc.*, 2013 WL 4496278 (E.D. Mo. Aug.
27  21, 2013); *O'Connor v. Diversified Consultants, Inc.*, 2013 WL 2319342 (E.D. Mo. May 28, 2013); *Mais v. Gulf Coast Collection Bureau, Inc.*, __ F. Supp. 2d. __, 2013 WL 1899616 (S.D. Fla. May 8, 2013); *Meyer v. Receivables*

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   heightens the risk that individuals and companies will be subject to decisions pointing in

2   opposite directions." *Charvat*, 630 F.3d at 466.

3          And in fact courts have disagreed over what "capacity" means under the TCPA.  For

4   instance, in *Hunt v. 21st Mortgage Corp.*, 2013 WL 5230061, at *3-4 (N.D. Ala. Sept. 17, 2013),

5   the court concluded that "to meet the TCPA definition of an 'automatic telephone dialing

6   system,' a system must have a ***present*** capacity, at the time the calls were being made, to store or

7   produce and call numbers from a number generator." (Italicized emphasis added.)  In reaching

8   this conclusion, the court refused to interpret "capacity" as broadly encompassing equipment

9   with a theoretical capacity to store or produce randomly or sequentially generated numbers

10  because "in today's world, the possibilities of modification and alteration are virtually limitless."

11  *Id.* at *4.  As the court explained, it is "virtually certain that software could be written, without

12  much trouble, that would allow iPhones" to fall under the auspices of the TCPA.  *Id.*  Such a

13  limitless definition of capacity would mean that "roughly 20 million American iPhone users

14  [would be] subject to the mandates of § 227(b)(1)(A)."  *Id.*  Meanwhile, the court in *Nelson v.*

15  *Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 928-29 (W.D. Wis. 2013), *vacated in its*

16  *entirety by* 2013 WL 5377280 (W.D. Wis. June 7, 2013), interpreted ATDS broadly to

17  encompass any equipment that could store or produce randomly or sequentially generated

18  numbers when paired with the appropriate hardware or software.

19         That courts have disagreed over what "capacity" means and what calling activity or

20  equipment meets the definition of an ATDS further demonstrates that staying this case pending

21  the FCC's ruling on the Petitions will ensure much-needed uniformity.  *See Barahona v. T-*

22  *Mobile US, Inc.*, 628 F. Supp. 2d 1268, 1272 (W.D. Wash. 2009) ("In view of the disparity

23  between the cases cited by the parties, the Court finds that the interest of uniformity weighs

24  heavily in favor of deferring to the expertise of the FCC under the primary jurisdiction

25  *Performance Mgmt., LLC*, 2013 WL 1914392 (W.D. Wash. May 8, 2013); *Selby v. Deutsche Bank Trust Co. Ams.*,
    2013 WL 1315841 (S.D. Cal. Mar. 28, 2013); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013);
26  *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013); *Coppock v. Citigroup, Inc.*,
    2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182 (S.D. Cal.
27  2013); *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  doctrine."); *Charvat*, 630 F.3d at 466 (staying case under primary jurisdiction doctrine because,

2  among other things, the TCPA and its regulations control "services nationally, creating the

3  possibility of conflicting decisions in different state and federal jurisdictions"). This uniformity

4  principle applies with particular force here, as the TCPA is a "strict liability" statute, subjecting

5  defendants to potentially staggering monetary damages that could be based on a faulty reading of

6  the statute. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

7  Permitting the FCC to speak first will avoid liability findings that may later turn out to be

8  incorrect. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (allowing agency to

9  decide issue first ensures "the limited functions of review by the judiciary are more rationally

10  exercised").

11                                                  \* \* \* \* \*

12          At bottom, Mr. Hurrle's Complaint requires resolving questions that are pending before

13  the agency Congress charged with regulatory authority over Mr. Hurrle's sole TCPA cause of

14  action. The TCPA subjects automated telephone calling to a comprehensive regulatory scheme

15  that requires the FCC's expertise for uniform administration. The Court should therefore stay

16  this action under the primary jurisdiction doctrine until the FCC issues its ruling on the pending

17  Petitions, as many courts have done in similar circumstances.[5]

18      **B.      The Court Should Stay This Action Pursuant to the Court's Inherent
                  Authority.**

19          Regardless of the primary jurisdiction doctrine, the Court should stay this case pursuant

20

21  ___

    [5] *See, e.g., Clark*, 523 F.3d at 1114-16 (affirming stay under primary jurisdiction doctrine where claim raised first
22  impression issues within FCC's special competence would decide threshold liability questions); *Charvat*, 630 F.3d
    at 465-68 (referring case to FCC under primary jurisdiction doctrine to determine if DISH Network was liable under
23  TCPA for sales calls made by independent contractor retailers; court cited benefits of uniformity, discretion, and
    expertise in making referral, stating that the "agency's views are the logical place for the judiciary to start") (internal
    quotation marks omitted); *Glauser v. Twilio, Inc.*, 2012 WL 259426, at \*2 (N.D. Cal. Jan. 27, 2012) (resolving,
24  among other things, "who qualifies as an auto-dialer subject to the TCPA" necessary to claims before the court and
    within FCC's jurisdiction); *Barahona*, 628 F. Supp. 2d at 1271 (staying case under primary jurisdiction doctrine
25  where, among other things, Congress placed regulation of cell phone services in FCC's special competence); *Fried*,
    2013 WL 6195483, at \*4 (staying case under primary jurisdiction doctrine because "the FCC is in the best position
26  to opine, in the first instance, on the technical and potentially far-reaching issues implicated in Plaintiffs' claims,
    namely, whether the use of [the] systems [at issue] ... violates the TCPA"); *United States v. DISH Network, LLC*,
27  2011 WL 475067, at \*3 (C.D. Ill. Feb. 4, 2011) (citing primary jurisdiction doctrine in staying TCPA claims against
    DISH Network pending FCC ruling in *Charvat*).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1  to its inherent authority.

2  > A trial court may, with propriety, find it is efficient for its own docket and the
   > fairest course for the parties to enter a stay of an action before it, pending
3  > resolution of independent proceedings which bear upon the case. This rule …
   > does not require that the issues in such proceedings are necessarily controlling of
4  > the action before the court.

5  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citing, *inter alia*,

6  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Absent a stay, Real Time may be forced to

7  incur the burden and expense of defending claims that the FCC's guidance may reveal to lack

8  merit. And given the early stage of this case (the parties only yesterday held their Rule 26(f)

9  conference) and the likelihood of an imminent FCC ruling, Mr. Hurrle cannot show he would

10 suffer prejudice by a short stay. *See Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.*, 386

11 F. Supp. 2d 144, 151 (W.D.N.Y. 2005) (granting a stay where it appeared FCC decision

12 "[would] be forthcoming in a matter of months").

13 ## IV.   CONCLUSION

14 For the foregoing reasons, the Court should stay this case under the primary jurisdiction

15 doctrine or pursuant to its inherent authority until the FCC rules on the pending Petitions.

16 Respectfully submitted this 12th day of December, 2013.

17                                      DAVIS WRIGHT TREMAINE LLP
                                        Attorneys for Defendant Real Time Resolutions,
18                                      Inc.

19

20                                      By: s/*Kenneth E. Payson*
                                           Kenneth E. Payson, WSBA #26369
21                                         Rebecca J. Francis, WSBA #41196
                                           1201 Third Avenue, Suite 2200
22                                         Seattle, Washington 98101-3045
                                           Telephone: (206) 622-3150
23                                         Fax: (206) 757-7700
                                           E-mail: kenpayson@dwt.com
24                                                 rebeccafrancis@dwt.com

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Beth E Terrell:      bterrell@tmdwlaw.com, bkinsey@tmdwlaw.com, docketrequests@tmdwlaw.com, enordby@tmdwlaw.com, filing@tmdwlaw.com, jchase@tmdwlaw.com

Michael Duane Daudt:      mdaudt@tmdwlaw.com, bkinsey@tmdwlaw.com, docketrequests@tmdwlaw.com, enordby@tmdwlaw.com, filing@tmdwlaw.com, jchase@tmdwlaw.com

Justin M Baxter:      justin@baxterlaw.com, danae@baxterlaw.com, kachelle@baxterlaw.com

Alexander H Burke:      aburke@burkelawllc.com

DATED this 12th day of December, 2013.

s/Kenneth E. Payson
Kenneth E. Payson, WSBA #26369
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: kenpayson@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax