THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD HURRLE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL TIME RESOLUTIONS, INC.,<br><br>    Defendant. | NO. 3:13-cv-05765-BHS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC** |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................1

    A. Plaintiff's Complaint ................................................................................1

    B. The FCC Has Already Ruled on the Issues Raised by the Pending Petitions ....................................................................................................2

    C. Real Time Fails to Explain the Details of Its Automatic Telephone Dialing System ..........................................................................................4

III. AUTHORITY AND ARGUMENT ......................................................................4

    A. The Court Should Deny Defendant's Motion to Stay Because the Petitions Do Not Raise Issues of First Impression .................................4

        1. The FCC Has Unequivocally Ruled that the TCPA Applies to Non-Telemarketing Calls to Cellular Telephones ...............................6

        2. The FCC and the Ninth Circuit Have Already Determined that Predictive Dialers Used to Call Lists of Numbers are Autodialers Regulated by the TCPA Regardless of Whether Such Equipment has the Capacity to Store or Produce Randomly or Sequentially Generated Numbers ......................................7

        3. A Stay Would Prejudice Plaintiff and Class Members ..........................11

    B. The Fair Administration of Justice Weighs Against a Stay ................12

IV. CONCLUSION ...................................................................................................12

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - i
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**TABLE OF AUTHORITIES**

**Page No.**

**FEDERAL CASES**

*Blair v. CBE Group, Inc.*,
  No. 13-CV-134-MMA (WVG), 2013 WL 5677026 (S.D. Cal. Oct. 17, 2013) ................7

*Brown v. MCI WorldCom Network Servs., Inc.*,
  227 F.3d 1166 (9th Cir. 2002) ..........................................................................................4

*Charvat v. EchoStar Satellite, LLC*,
  630 F.3d 459 (6th Cir. 2010) ...........................................................................................5

*Clark v. Times Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) .........................................................................................4

*Davel Commc'ns, Inc. v. Qwest Corp.*,
  460 F.3d 1075 (9th Cir. 2006) .........................................................................................5

*Frydman v. Portfolio Recovery Assocs., LLC*,
  No. 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) ...................5, 7, 8, 11, 12

*Hunt v. 21st Mortgage Corp.*,
  2013 WL 5230061 (N.D. Ala. Sept. 17, 2013)................................................................9

*Jamison v. First Credit Servs., Inc.*,
  290 F.R.D. 92 (N.D. Ill. 2013) ..............................................................................5, 7, 11

*Pimental v. Google, Inc.*,
  No. C-11-02585-YGR, 2012 WL 1458179 (N.D. Cal. April 26, 2012) ..........................4

*Robinson v. Midland Funding, LLC*,
  No. 10cv2261 MMA (AJB), 2011 WL 1434919 (S.D. Cal. April 13, 2011)...............4, 8

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009) ...........................................................................................8

*Swope v. Credit Mgmt., LP*,
  No. 4:12CV832 CDP, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) ...............................5

*Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) ...........................................................................................4

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - ii
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Tovar v. Midland Credit Mgmt.*,
    No. 10cv2600 MMA (MDD), 2011 WL 1431988 (S.D. Cal. April 13, 2011) .............4, 8

**FEDERAL STATUTES**

47 U.S.C. § 227(b).................................................................................................*Passim*

**OTHER AUTHORITIES**

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    19 FCC Rcd. 19215 (2004) ........................................................................................7

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    17 FCC Rcd. 17459 (September 18, 2002) ................................................................8

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    Report and Order, 18 FCC Rcd. 14014 (2003) ..........................................................8

*In re Rules& Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    Declaratory Ruling, 23 FCC Rcd. 559 (2008).............................................................2

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    CG Dkt. No. 02-278, Declaratory Ruling, 12 FCC Rcd 143 (2012)...........................3, 10

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    Report and Order, 27 FCC Rcd. 1830 (2012) ............................................................7

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    Declaratory Ruling, 27 FCC Rcd. 15391 (2012)........................................................3

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - iii
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

## I. INTRODUCTION

This is a Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") case, which challenges Defendant Real Time Resolutions, Inc.'s ("Defendant" or "Real Time") practice of calling consumers' cellular telephones using an automatic telephone dialing system ("ATDS" or "autodialer") without the prior express consent of the called party. Defendant moves to stay this case, based upon the possibility that the law may change regarding (1) whether the TCPA applies to non-telemarketing calls to wireless telephones; and (2) whether predictive dialers that call lists of numbers rather than random or sequential numbers constitute autodialers subject to the TCPA. In particular, Defendant asks this Court to stay this matter until the Federal Communications Commission ("FCC") issues decisions on petitions to the agency, which seek "clarification" on these two issues that have already been reviewed and decided by the FCC and against Defendant's position. Moreover, Defendant has failed to explain the details of its telephone system and has therefore failed to make any showing that this case turns on the outcome of any petition pending before the FCC. Indeed, Defendant specifically refused to provide such details regarding its telephone system when Plaintiff's counsel requested the information to evaluate whether a change in the FCC's rules would impact this case.

The weight of authority mandates against entry of a stay here. As detailed below, several courts have recently explained when considering motions to stay in TCPA cases, there is little reason to stay litigation when, as here, the pending FCC actions do not raise an issue of first impression. For these reasons, Plaintiff respectfully requests the Court deny Defendant's motion to stay.

## II. STATEMENT OF FACTS

### A. Plaintiff's Complaint

Plaintiff Richard Hurrle filed a Class Action Complaint initiating this action on August 30, 2013. *See* Dkt. No. 1. In his Complaint, Plaintiff alleges Real Time called him on his cellular telephone using an autodialer and demanding payment for a debt. *Id*. ¶¶ 14 – 18. Plaintiff alleges part of Defendant's regular business practice is to make repeated phone calls to

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 1
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

persons it believes responsible for paying past-due mortgage loans. *Id*. ¶ 13. Each of the calls placed by Real Time were made by means of an autodialer, and were made despite the fact that Plaintiff has no business relationship with Real Time and has never given consent to Real Time to call his cellular telephone. *Id*. ¶¶ 17 – 18.

Mr. Hurrle filed this action on his own behalf and on behalf of a Class of similarly situated individuals to secure Class member remedies provided for in 47 U.S.C. § 227(b)(3) and to enjoin Defendant from continuing to violate the TCPA. *Id*. ¶¶ 28 – 35.

Plaintiff proposes the Court certify a Class as follows:

> All persons within the United States who received a nonemergency telephone call from Real Time Resolutions, Inc. to a cellular telephone through the use of an automatic telephone dialing system and who did not provide prior express consent for such calls, at any time from August 30, 2009 to the date of trial.

*Id*. ¶ 20.

Defendant answered Plaintiff's Complaint on October 16, 2013. *See* Dkt. No. 12.

**B.**     **The FCC Has Already Ruled on the Issues Raised by the Pending Petitions**

In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA regulates, among other things, the use of automated telephone equipment or "autodialers." Specifically, the plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party, as alleged in Plaintiff's Complaint. *See* Dkt. No. 1 ¶¶ 13 – 18.

The FCC is the agency vested with authority to issue regulations implementing the TCPA. On July 3, 2003, the FCC found that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, at 14092-93, ¶ 134 (2003) ("*2003 TCPA Order*"). On July 4, 2008, the FCC clarified the existing rules under the TCPA. *See In re Rules& Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559 (2008) ("*2008 Declaratory*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 2
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Ruling*"). In particular, it affirmed that it is unlawful to make a call using an automatic telephone dialing system or an artificial or prerecorded message to a wireless telephone number for purposes of collecting a debt unless the call is made with the "prior express consent" of the called party. *Id*. ¶ 9. The FCC concluded "that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Id*. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id*. ¶ 10. The 2008 ruling also affirmed that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers. *Id*. ¶ 12. The FCC again reiterated this point in a 2012 declaratory ruling, noting that the agency has "emphasized" that the definition of an autodialer under the TCPA "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from callings lists." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 FCC Rcd. 15391, at ¶ 2, n.5 (2012) (emphasis in original).

Defendant now moves for a stay on the grounds that three petitions for declaratory ruling currently before the FCC may change these well-established rules on the scope of the TCPA. *See* Dkt. No. 15, Exs. A, E & G (attaching *In re Commc'n Innovators' Pet. For Declaratory Ruling*, CG Dkt. No. 02-278 (June 7, 2012) ("CI Petition"); *In re GroupMe, Inc./Skype Commc'ns S.A.R.L.'s Pet. For Expedited Declaratory Ruling & Clarification*, CG Dkt. No. 02-278 (Mar. 1, 2012) ("GroupMe Petition"); *In re YouMail, Inc's Pet. For Expedited Declaratory Ruling*, CG Dkt. No. 02-278 (April 19, 2013) ("YouMail Petition")).

**C.    Real Time Fails to Explain the Details of Its Automatic Telephone Dialing System**

On November 25, 2013, Real Time's counsel contacted Plaintiff's counsel and asked for agreement to stay this matter. *See* Declaration of Beth E. Terrell ("Terrell Decl.") ¶ 2. Real

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 3
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Time's counsel explained the stay was requested to await the FCC's decisions regarding whether predictive dialers that call lists of numbers rather than random or sequential numbers constitute autodialers subject to the TCPA. *Id*. When Plaintiff's counsel asked Real Time's counsel to provide the details of Defendant's ATDS so that Plaintiff could evaluate whether the issues raised in the CI, GroupMe or YouMail petitions would impact the case, Real Time refused. *Id*.

### III.  AUTHORITY AND ARGUMENT

**A.  The Court Should Deny Defendant's Motion to Stay Because the Petitions Do Not Raise Issues of First Impression**

The primary jurisdiction doctrine "applies in a limited set of circumstances." *Clark v. Times Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It is not a doctrine that "require[s] that all claims within an agency's purview be decided by the agency." *Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (citing *Brown v. MCI WorldCom Network Servs., Inc.*, 227 F.3d 1166 (9th Cir. 2002)). "Rather, it is a doctrine used by the courts to allocate <u>initial</u> decisionmaking responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflict exist." *Id*. (emphasis added; internal quotations and citations omitted). Thus, when a pending FCC action does not raise an issue of first impression, a district court should deny a motion to stay litigation. *See, e.g., Tovar v. Midland Credit Mgmt.*, No. 10cv2600 MMA (MDD), 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011) (denying motion to stay pending FCC action, noting that the issues "are not ones of first impression" and that "the FCC has already determined… the [TCPA's] definition of 'automatic telephone dialing system' includes 'predictive dialers'"); *Robinson v. Midland Funding, LLC*, No. 10cv2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011) (same); *Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 1458179, at *3 (N.D. Cal. April 26, 2012) (denying motion to stay, explaining that "[w]hile the doctrine of primary jurisdiction may be invoked in cases involving statutory interpretation, such situations typically involve resolution of an issue of first impression" and noting that "Defendants do not dispute that the courts and the FCC have interpreted these terms in the past"); *Swope v. Credit*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 4
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  *Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (denying
2  motion to stay, noting that the "FCC has already considered the particular issues posed by the
3  petition at least twice" and "[b]oth times, [the FCC] has held that predictive dialers are
4  considered automatic telephone dialing systems subject to the TCPA"); *Jamison v. First Credit
5  Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (denying motion to stay because "the FCC has
6  already ruled that a predictive dialer constitutes automatic telephone dialing equipment three
7  times").[1]

8  Here, Real Time seeks a stay on the grounds that Plaintiff Hurrle's Complaint turns on
9  two issues currently pending before the FCC in three Petitions for Declaratory Ruling: (1)
10 whether the TCPA applies to non-telemarketing calls to wireless telephones; and (2) whether
11 predictive dialers that call lists of numbers rather than random or sequential numbers constitute
12 autodialers subject to the TCPA. *See* Dkt. No. 14 at 3:3 – 6:9; Dkt. No. 15, Exs. A, E & G.
13 The issues posed by these petitions are not issues of first impression. Waiting for yet another
14 FCC ruling "clarifying" these already decided issues would therefore only serve to
15 unnecessarily delay the resolution of this litigation. *See Frydman v. Portfolio Recovery
16 Assocs., LLC*, No. 11 CV 524, 2011 WL 2560221, at *7 (N.D. Ill. June 28, 2011) (denying
17 motion to stay pending FCC action).

> The repetitious nature of the requests to the FCC to reconsider its
> rules on the scope of the TCPA suggests that deferring to the
> agency on this issue only would add fuel to a never-ending cycle
> at the cost of delaying resolution of the underlying dispute. The
> impact of such delay on the expeditious resolution of disputes
> and the interest of proving certainly to the parties here and others

---

[1] The cases cited by Defendant are distinguishable. *See* Def's Br. at 6:16 – 7:1 (citing *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006); *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010)). *Davel* was a case involving claims of payphone service providers against an incumbent local exchange carrier (Qwest) and the reimbursement owed, the application of filed tariffs and other issues uniquely in the expertise of the FCC. 460 F.3d 1075. It was not a TCPA case and application of the primary jurisdiction doctrine was appropriate. *Id*. Unlike *Davel*, this case involves questions of statutory interpretation on issues already addressed by the FCC on at least three occasions. *Charvat* is also inapposite. 630 F.3d 459. That case addressed the issue of whether an entity is liable under the TCPA when calls were made "on its behalf" by another entity. In considering the appeal, the Sixth Circuit "invited the FCC… to express its views on several issues presented by the case" and the FCC suggested the court "refer the matter to the agency under the doctrine of primary jurisdiction." *Id*. at 461. The FCC has made no such suggestion in this case.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 5
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

> similarly situated outweigh any potential benefits of deferring to the FCC on this issue, which are minimal at best.

*Id*. at *7. Defendant's motion to stay should be denied.

### 1. The FCC Has Unequivocally Ruled that the TCPA Applies to Non-Telemarketing Calls to Cellular Telephones

The FCC has long recognized that the plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make <u>any call</u>, regardless of content, to a wireless number in the absence of an emergency or the prior express consent of the called party. *See generally 2003 TCPA Order*; *and 2008 Declaratory Ruling*. In an order issued on July 3, 2003, the FCC affirmed that it is unlawful "to make *any call*" using an autodialer, recognizing that "such calls can be costly and inconvenient," particularly given that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes used." *2003 TCPA Order* ¶ 165 (emphasis in original; citing 47 U.S.C. § 227(b)(1)).

In 2008, the FCC reaffirmed that it is unlawful to make <u>any call</u> using an autodialer to any wireless telephone number. *See 2008 Declaratory Ruling*. The *2008 Declaratory Ruling* was issued in response to a petition by ACA International, an international trade organization of credit and collections companies, that sought "clarification that the prohibition against autodialed or prerecorded calls to wireless telephone numbers… does not apply to creditors and collectors when calling wireless telephone numbers to recover payment[.]" *Id*. ¶ 8, *compare with* Dkt. No. 14 at 3:8 – 6:9 (describing the three petitions for declaratory rulings currently pending before the FCC as seeking clarification that the TCPA does not apply to non-telemarketing calls). The FCC rejected ACA's assertion that the use of autodialers by creditors to attempt to recover payments is not governed by the TCPA. *Id*. Instead, the FCC reiterated "that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number," noting that "this prohibition applies <u>regardless of the content of the call</u>, and is not limited only to calls that constitute "telephone solicitations."" *Id*. ¶ 11 (emphasis added).[2]

---

[2] *See also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 27 FCC Rcd. 1830, 1841-42 ¶¶ 28 – 29 (2012) ("*2012 TCPA Order*") (reaffirming that "Section 227(b)(1)(A) and [the FCC's]

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 6
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    Despite the FCC's clear rulings, Defendant asserts a stay is warranted in light of three
2    petitions to the FCC, which ask the agency to once again "decide whether the TCPA applies to
3    non-telemarketing calling activities." Dkt. No. 14 at 3:8-17.  Because the FCC has already
4    decided this issue, Defendant's assertion that a stay is warranted to await decisions on the CI,
5    GroupMe and YouMail Petitions should be rejected.

6    Plaintiff alleges that Defendant called him on his cellular telephone using an autodialer
7    and demanding payment for a debt.  Dkt. No. 1 at ¶¶ 14 – 18.  As the FCC has already
8    determined, such calls are prohibited "regardless of the content of the call."  This case should
9    not be stayed to await another FCC ruling reiterating that the TCPA's prohibition on the use of
10   autodialers "is not limited to calls that constitute 'telephone solicitation,'" but that the TCPA's
11   plain language prohibits the use of autodialers to make <u>any call</u> to a wireless number.

2.   **The FCC and the Ninth Circuit Have Already Determined that Predictive Dialers Used to Call Lists of Numbers are Autodialers Regulated by the TCPA Regardless of Whether Such Equipment has the Capacity to Store or Produce Randomly or Sequentially Generated Numbers**

The FCC has also addressed the issue of whether predictive dialers are autodialers under the TCPA at least three times.  *See Jamison*, 290 F.R.D. at 101 (citing *2003 TCPA Order* at ¶ 131; *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 19 FCC Rcd. 19215, n.1 (2004) ("*2004 TCPA Order*"); *2008 TCPA Order* at ¶ 12).  This is clearly not an issue of first impression.  Indeed, this is why numerous courts have rejected similar motions to stay based on the primary jurisdiction doctrine.  *See, e.g., Frydman*, 2011 WL 2560221, at *5 (denying motion for stay that requested stay on primary jurisdiction grounds so FCC may decide whether debt collectors are exempt from FCC and whether predictive dialers are automated dialing systems within the meaning of the term in the TCPA); *Tovar*, 2011 WL 1431988, at *4 (rejecting motion to stay, in part, because FCC has already addressed that

---

implementing rules continue to require some form of prior express consent for autodialed or prerecorded non-telemarketing calls to wireless numbers."); *Blair v. CBE Group, Inc.*, No. 13-CV-134-MMA (WVG), 2013 WL 5677026, at *3 (S.D. Cal. Oct. 17, 2013) (denying motion to dismiss TCPA claims against debt collector noting "it is clear that the TCPA *may* apply to 'autodialed' or prerecorded debt collector claims under the right circumstances, and citing cases and FCC Orders) (emphasis in original).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 7
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

"predictive dialers used by debt collectors fall within the meaning of autodialers"); *Robinson*, 2011 WL 1434919 (same).

In 2002, the FCC solicited comments concerning the TCPA's definition of an "automatic telephone dialing system." *See In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 17 FCC Rcd. 17459, 17473-476 (September 18, 2002). The FCC acknowledged that autodialing technology had advanced. *See id. at* 17474 ("More sophisticated dialing systems, such as predictive dialers and other electronic hardware and software containing databases of telephone numbers, are not widely used by telemarketers to increase productivity and lower costs."). In light of that fact, the FCC sought comments concerning "whether Congress intended the definition of 'automatic telephone dialing system' to be broad enough to include any equipment that dials numbers automatically, either by producing 10-digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers." *Id*. "Specifically, we ask whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers." *Id*. at 17475.

Defendant's attempt to couch the argument in different terms by focusing on the purported lack of a definition for what "capacity" means under the TCPA does not require a new ruling from the FCC. The FCC made it clear in its *2003 TCPA Order* that a predictive dialer need not have the *present* capacity to randomly or sequentially generate telephone numbers to constitute an autodialer within the ambit of the TCPA. *See 2003 TCPA Order*, ¶ 133. Rather, "the purpose of the requirement that equipment have the 'capacity to store or produce numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id*. Defendant's argument, and the arguments raised in the petitions by CI, GroupMe and YouMail, have already been considered and rejected. *See* Def's Br. at 3:3 – 6:9 (arguing that predictive dialers that call lists of numbers should not be considered autodialers because such equipment does not have "the current ability to generate and dial random or

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 8
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

sequential numbers").[3]  In fact, as the court noted in *Griffith v. Consumer Portfolio Serv. Inc.*, 838 F. Supp.2d 723, 725-26 (N.D. Ill. 2011) several companies argued in comments to the FCC "that predictive dialers fell outside the TCPA's scope because a list or database of actual customer telephone numbers is, by definition not randomly or sequentially generated."  The FCC rejected these comments, concluding that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."  *2003 TCPA Order*, ¶ 133.

Similarly, the Ninth Circuit Court of Appeals has stressed: "When evaluating the issue of whether equipment is ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'"  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original).  Accordingly, an autodialer "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."  *Id*.  That is, an autodialer need not have the *present* capacity to randomly or sequentially generate telephone numbers to constitute an autodialer governed by the TCPA.

In its *2008 Declaratory Ruling*, the FCC once again responded to an argument by a petitioner identical to the argument raised by Defendant here that because "debt collectors use predictive dialers to call specific numbers provided by established customers," a predictive

---

[3] Defendant cites a single case to support its argument that the FCC should reverse course and find that predictive dialers that call lists of numbers but that do not have the *present* capacity to store or produce randomly or sequentially generated numbers do not meet the TCPA definition of autodialers.  *See* Def's Br. at 10:3-18 (citing *Hunt v. 21st Mortgage Corp.*, 2013 WL 5230061, at *3-4 (N.D. Ala. Sept. 17, 2013).  The *Hunt* case, however, does not support Defendant's argument.  In that case, the defendant's telephone system "never had the use of an autodialer, predictive dialer or any recording capability" to store or produce and call numbers from a number generator for any purpose – not to call lists of numbers and not to call random or sequential numbers.  2013 WL 5230061, at *3-4.  The *Hunt* court therefore did not consider whether dialing equipment "must have a current capacity to generate and dial random or sequential numbers" to be an autodialer as Defendant argues here.  *See* Def's Br. at 1.  Instead, the *Hunt* court only considered whether such equipment must have a current capacity "to store or produce and call numbers" at all.  2013 WL 5230061, at *3-4.  Predictive dialers have such capacity by definition.  Moreover, as set forth above, the FCC has repeatedly confirmed that predictive dialers are autodialers within the meaning of the TCPA regardless of whether such equipment has the *present* capacity to store or produce randomly or sequentially generated numbers.  That predictive dialers are used to call lists of numbers is enough for such equipment to fall within the ambit of the TCPA.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 9
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

dialer should "meet[] the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *2008 Declaratory Ruling* ¶ 12; *see also* Dkt. No. 15, Ex. A (CI Pet. at 1) (arguing that predictive dialers that call lists of numbers rather than random or sequential numbers should not be considered autodialers); Ex. F (GroupMe Petition at 14) (same); Ex. G (YouMail Pet. at 11) (same). In rejecting this argument, the FCC reaffirmed that the use of autodialers to place calls to wireless numbers was "determined by Congress to threaten public safety and inappropriately shift costs to consumers." *2008 Declaratory Ruling* ¶ 14. The FCC concluded that to find that such calls "are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls." *Id*. There is therefore no reason to stay this case to await a determination on petitions that ask the FCC to again determine whether predictive dialers that call lists of numbers constitute autodialers.[4]

Plaintiff alleges Defendant called him on his cellular telephone using an autodialer despite the fact that Plaintiff has no business relationship with Real Time and has never given his consent to Real Time to call his cellular telephone. *See* Dkt. No. 1 at ¶¶ 13 – 18. Despite Defendant's assertions to the contrary, Plaintiff need not allege that "Real Time's calling equipment has the current capacity to store or produce randomly or sequentially generated numbers." Dkt. No. 14 at 7:7-12. As the FCC has repeatedly made clear, it is unlawful to make calls to a cellular telephone using an autodialer regardless of whether that equipment is paired with equipment that has the capacity to store or produce randomly or sequentially generated numbers. Predictive dialers that call lists of numbers constitute autodialers governed by the TCPA.

---

[4] *See also In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, CG Dkt. No. 02-278, Declaratory Ruling, 12 FCC Rcd 143, n.2 (2012) (citing the *2003 TCPA Order* with approval and noting the FCC "has emphasized" that the definition of autodialers "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists".

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 10
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

More importantly, Defendant has failed to explain the details of its telephone systems and how this case would be resolved by any change in the FCC's rules regarding autodialers. In fact, Defendant specifically refused to provide any such details when Plaintiff's counsel requested the information to evaluate whether a change in the FCC's rules would impact this case. *See* Terrell Decl. ¶ 2. Defendant has therefore failed to make any showing that any issue in this case turns on the outcome of the CI, GroupMe or YouMail Petitions.

### 3. A Stay Would Prejudice Plaintiff and Class Members

Courts weigh the benefits of applying the primary jurisdiction doctrine against the potential litigation costs resulting from complications and delay. *Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995); *see also Frydman*, 2011 WL 2560221, at *7. A stay will not serve judicial economy here.

In *Jamison*, the court noted "[t]he defendants have not offered any evidence or argument to suggest that if the FCC were to change its position that change would apply retroactively to the pending litigation." 290 F.R.D. at 102; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that agency regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations require it); *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012). The court therefore concluded that a change in the FCC's rules would likely not affect the plaintiff's claims. *Id.*; *see also Frydman*, 2011 WL 2560221, at *7 (declining to refer case to FCC under doctrine of primary jurisdiction because any ruling would likely only be made on a prospective basis).

As in *Jamison*, Defendant offers no evidence or argument that if the FCC were to change its position that those changes would apply retroactively. Moreover, it is well recognized that "[a]gency decisionmaking often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system." *Nat'l Commc'ns Ass'n*, 46 F.3d at 225. While Defendant offers its "assumption" that the FCC "<u>may</u> issue a decision regarding the CI Petition imminently," there is no way to know for certain when the FCC will rule on any of the petitions. *See* Def's Br. at 5:6-15. As noted in *Frydman*, where the court denied the

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 11
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

defendant's motion to stay, the delay that may be encountered waiting for an agency decision is often lengthy.  2011 WL 2560221, at *7 (noting, for a touch of humor, that "[w]hether the FCC's… process is completed this year, next year, or in the next century, the results of that process are likely of only limited utility for the Court to decide the issues in this case. Therefore, judicial economy will be served by proceeding with this case and letting the FCC's process run its own course.").

In short, the substantial delay that would result from a stay and the impact to Plaintiff and the Class will outweigh any potential benefits of waiting for the FCC to rule on these issues for the fourth time.

### B.     The Fair Administration of Justice Weighs Against a Stay

The Court's inherent authority to stay pending litigation is not without limits.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 111 (9th Cir. 2005).  Rather, a party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work a damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).  Thus, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside" to await a ruling in another action.  *Id*.; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

Real Time has failed to even attempt to establish a sufficient case of hardship.  As the *Lockyer* court noted, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" justifying a stay. Further, as set forth above, it is highly doubtful the FCC will reverse course on its rules on the scope of the TCPA. The motion should be denied.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion to Stay Pending Outcome of Petitions Before FCC.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 12
CASE NO. 3:13-CV-05765-BHS

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

RESPECTFULLY SUBMITTED AND DATED this 8th day of January, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By: /s/ Beth E. Terrell, WSBA #25759
    Beth E. Terrell, WSBA #26759
    Email: bterrell@tmdwlaw.com
    Michael D. Daudt, WSBA #25690
    Email: mdaudt@tmdwlaw.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 350-3528

    Justin M. Baxter, WSBA #39182
    Email:  justin@baxterlaw.com
    BAXTER & BAXTER, LLP
    8835 SW Canyon Lane, Suite 130
    Portland, Oregon  97225
    Telephone:  (503) 297-9031
    Facsimile: (503) 291-9172

    Alexander H. Burke, *Admitted Pro Hac Vice*
    Email:  aburke@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois  60601
    Telephone:  (312) 729-5288
    Facsimile:  (312) 729-5289

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 13
CASE NO. 3:13-cv-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on January 8, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Kenneth E. Payson, WSBA #26369
> Email:  kenpayson@dwt.com
> Rebecca Francis, WSBA #41196
> Email:  rebeccafrancis@dwt.com
> DAVIS WRIGHT TREMAINE LLP
> 1201 Third Avenue, Suite 2200
> Seattle, Washington 98101-3045
> Telephone: (206) 622-3150
> Facsimile: (206) 757-7700
>
> *Attorney for Defendant*

DATED this 8th day of January, 2014.

> TERRELL MARSHALL DAUDT & WILLIE PLLC
>
> By:   /s/ Beth E. Terrell, WSBA #25759
> Beth E. Terrell, WSBA #26759
> Email: bterrell@tmdwlaw.com
> 936 North 34th Street, Suite 300
> Seattle, Washington  98103
> Telephone:  (206) 816-6603
> Facsimile:  (206) 350-3528
>
> *Attorney for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF PETITIONS BEFORE FCC - 14
CASE NO. 3:13-CV-05765-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com